**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**REGINALD E. BRONSON and LAWRENCE STENGER,**

Plaintiffs,

v.

**FOUR WHEEL DRIVE HARDWARE, LLC,**

Defendant.

Civil No. 00-2616 (PAM/SRN)

**ORDER**

---

APPEARANCES

Michael S. Sherrill, Esq., for Plaintiffs.

R. Eric Gaum, Esq. and Richard Dahl, Esq., for Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on April 4, 2002, on Defendant's Motion for Fees, Costs, and Expenses Pursuant to 28 U.S.C. § 1927 (Doc. No. 26), and Defendant's Motion for Fees, Costs, and Expenses Pursuant to 35 U.S.C. § 285 (Doc. No. 53). The case has been referred to the undersigned for resolution of pre-trial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. BACKGROUND FACTS

This litigation arises out of Defendant's alleged infringement of Plaintiffs' design patent, U.S. Patent No. Des. 384,015 ("the '015 patent"). Plaintiffs sought patent protection for their reflective Jeep® dashboard design with ornamental fasteners in December, 1995. (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. D.)

MAY 0 8 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Plaintiffs received a design patent for their reflective dashboard on September 23, 1997. (Bronson Aff. ¶ 10.)

Sometime after September 23, 1997, Plaintiff Stenger saw a reflective dashboard in a Jeep® vehicle, and believed that said dashboard had been sold by Defendant. (Stenger Aff. ¶ 10.) When Plaintiff Stenger contacted one of Defendant's sales representatives by telephone, he learned that Defendant sold reflective stainless steel replacement dashboards for Jeep® vehicles. (Stenger Aff. ¶ 11.) Plaintiffs did not, however, order any of the allegedly infringing products from Defendant at that time, nor did Plaintiffs ever obtain a sample of Defendant's products, claiming it was too cost prohibitive to do so.[1] (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. B at 6; Ex. A.) Instead, in a letter dated February 8, 1998, Plaintiffs notified Defendant of their design patent, accused Defendant of infringing the '015 patent, and demanded that Defendant discontinue the manufacture and sale of any infringing products. (Stenger Aff. ¶ 12.) Defendant apparently did not respond to Plaintiffs' letter, so Plaintiffs retained attorney Michael S. Sherrill on November 29, 2000 (Stenger Aff. ¶ 14), and filed their Complaint on November 30, 2000 (Doc. No. 1).

In their Complaint, Plaintiffs accused Defendant of infringing the '015 patent by manufacturing and selling six specific products listed in Defendant's Spring/Summer 2000 catalog. (Compl. ¶¶ 3, 8; Am. Compl. ¶¶ 3, 8.) These replacement dashboards for Jeep® vehicles were made of steel or stainless steel. (Peters Aff. ¶ 3.) None of the

---

[1] The most expensive of these products cost $199.50. (Peters Aff. Ex. A at 2.) Thus, if Plaintiff had ordered all six dashboards, the total cost of the products would have been $1,001.88. Furthermore, Defendant has a thirty-day return policy, in which it may charge a restocking fee of ten or twenty percent, but imposes such a fee only when necessary. (Peters Aff. ¶ 7.) In this case, the maximum out-of-pocket for restocking fees would have been approximately $200.38.

allegedly infringing dashboards were sold with fasteners of any type, nor did Defendant sell fasteners separately that were similar to those shown in the '015 patent. (Peters Aff. ¶¶ 5, 6.) Because Defendant believed that it did not infringe Plaintiffs' design patent, it propounded a set of requests for admissions to Plaintiffs, in which Defendant requested Plaintiffs admit that Defendant's individual products infringed their patent. (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. A.) In response, Plaintiffs stated that "[t]he information known or readily available is insufficient to enable Plaintiffs to admit or deny this admission." (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. A.)

After Plaintiffs initiated this suit on November 30, 2000, Defendant's counsel began discussions with Plaintiffs' counsel regarding Plaintiffs' design patent and Defendant's products. (Sherrill Aff. Ex. B.) As early as February 26, 2001, Defendant's counsel provided Plaintiffs with its 1994 catalog in which it sold reflective replacement dashboards for Jeep® vehicles, and alleged inequitable conduct by Plaintiffs. (Sherrill Aff. Ex. B at 2-3.) In response, Plaintiffs' counsel alleged that Plaintiffs had provided the Patent and Trademark Office ("PTO") with all prior art references known to them at the time. (Sherrill Aff. Ex. B at 3.) However, it appears upon review of the patent prosecution history that no such prior art references were provided to the PTO. (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. D.)

Defendant sought to resolve the present litigation quickly and without needless expense. Beginning with Defendant's February 26, 2001 correspondence, Defendant provided Plaintiffs with prior art references as they were discovered. On June 19, 2001, Defendant provided Plaintiffs with a copy of the August 1982 issue of Off-Road

magazine showing a reflective Jeep® dashboard panel. (Sherrill Aff. Ex. B at 23.) Plaintiffs reviewed the article, but could not "ascertain whether the dark images appearing on the dashboard shown in the Article were reflections or shadows." (Stenger Aff. ¶ 16; Bronson Aff. ¶ 16.) Although Plaintiffs did not investigate further, they refused to dismiss this action on that basis.

Furthermore, Defendant painstakingly laid out for Plaintiff why, even if the patent was valid, Defendant's products could not infringe. Defendant explained that because it did not sell fasteners with its dashboards, nor did it sell ornamental fasteners similar to those claimed by Plaintiffs in the '015 patent, that Defendant's products could not infringe the '015 patent. (Sherrill Aff. Ex. B at 6.) Defendant reviewed the patent prosecution history, provided Plaintiffs with numerous prior art references, and gave Plaintiffs multiple opportunities to withdraw their Complaint. However, armed with Defendant's 2000/2001 catalog showing reflective Jeep® dashboards without fasteners, Plaintiffs charged ahead.

Defendant alerted Plaintiffs in October or November 2001, that it would be filing a motion for summary judgment. However, Defendant, in an effort to avoid placing Plaintiffs in a position in which they would have to work through the December holidays, told Plaintiffs that it would hold off filing its motion until January. In contrast, Plaintiffs decided in November 2001, that they would seek a re-examination of their patent with the PTO, but did not inform Defendant of their intentions. (Sherrill Aff. ¶ 9.) Thus, on January 4, 2002, Defendant served Plaintiffs with its motion for summary judgment, requesting the Court declare the '015 patent invalid and not infringed, and find that Plaintiffs committed inequitable conduct before the PTO. Plaintiffs responded to the

motion on January 28, 2002, and conceded that the '015 patent was invalid based upon the prior art displayed in the August 1982 issue of Off-Road magazine, and at the same time, Plaintiffs served a motion to dismiss this action with prejudice.

Plaintiffs' actions since becoming aware of the August 1982 article in Off-Road magazine give rise to the instant motions. Since providing Plaintiffs with the invalidating prior art on June 19, 2001, Defendant has (1) prepared and propounded interrogatories, document requests, and two sets of requests for admissions; (2) prepared responses to Plaintiffs' interrogatories, document requests, and requests for admissions; (3) provided supplemental responses to Plaintiffs' interrogatories; (4) prepared its motion for summary judgment and a reply brief; (5) prepared a motion for sanctions for Plaintiffs' failure to conduct an objectively reasonable pre-filing investigation, which subsequently was withdrawn; (6) prepared its motions for fees, costs, and expenses; and (7) interacted on numerous occasions with Plaintiffs' counsel by letter, telephone, and e-mail. (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses at 2.) Thus, Defendant requests an Order awarding to Defendant its costs, fees, and expenses incurred in defending against this action.

Plaintiffs argue that Defendant's motion should be denied. Plaintiffs counter that they served interrogatories to investigate their claims against Defendant, believed any reflective dashboard (regardless of the presence of fasteners) infringed their patent, could not afford to purchase samples of Defendant's products, and that Defendant's "pattern of vexatious motion practice" is the cause of prolonging and increasing the costs of this litigation. (Pls. Mem. Opp. Def.'s Mot. Att'y Fees, Costs, and Expenses at 1.)

## II. DEFENDANT'S MOTIONS FOR FEES, COSTS, AND EXPENSES

Defendant seeks an Order allowing it to recover its attorneys' fees, costs, and expenses it has incurred in defending against this patent infringement suit. Defendant seeks fees from Plaintiffs pursuant to 35 U.S.C. § 285. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (2001). In awarding fees to a prevailing party, courts must first determine whether the case is exceptional, and if so, whether an award of attorneys' fees is warranted. See Interspiro USA, Inc. v. Figgie Int'l, Inc., 18 F.3d 927, 933 (Fed. Cir. 1994) (citing J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047, 1050 (Fed. Cir. 1987)). Defendant also seeks fees from Plaintiff's counsel pursuant to 28 U.S.C. § 1927, which provides that any attorney who unreasonably and vexatiously multiplies the proceedings may be personally liable for the excess costs, fees, and expenses.

### A. Defendant is the Prevailing Party

On January 4, 2002, Defendant served its motion for summary judgment. In response, on January 28, 2002, Plaintiffs conceded that the '015 patent is invalid based upon the reflective dashboard shown in the August 1982 issue of Off-Road magazine. (Pls. Mem. Opp. Def.'s Mot. Summ. J. at 2.) Additionally, Plaintiffs served a motion to dismiss their patent infringement claims against Defendant with prejudice, which motion is currently pending before Judge Magnuson, due to Defendant's pending counterclaims. Furthermore, on February 25, 2002, Plaintiffs filed a disclaimer of the '015 patent with the PTO. (Pls. Am. Reply Mem. Supp. Pls. Mot. Dismiss Ex. 1.) As a result of these actions, Defendant may be considered the prevailing party on the Plaintiffs' infringement claims, and Plaintiffs do not argue otherwise. See Technimark, Inc. v. Crellin, Inc., 14 F. Supp. 2d 762, 767 (M.D.N.C. 1998).

**B. Attorneys' Fess May Be Awarded in "Exceptional" Cases**

Courts may award reasonable attorneys' fees to the prevailing party in exceptional cases. 35 U.S.C. § 285. The types "of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the [Patent Office], misconduct during litigation, vexatious or unjustified litigation, and frivolous suit." Beckman Instruments, Inc. v. LKP Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989). "The filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitutes grounds for declaring a case exceptional under 35 U.S.C. § 285 and awarding costs, attorney fees, and expenses to the accused infringer." Eltech Sys. Corp. v. PPG Indus., 710 F. Supp. 622, 636 (W.D. La. 1988), aff'd 903 F.2d 1547, 1551 (Fed. Cir. 1989). The Court finds the present case to be exceptional because it appears to be unjustified litigation and a baseless lawsuit.

**1. *Design Patent Infringement Elements***

"Determining whether a design patent is infringed requires (1) construction of the patent claim, and (2) comparison of the construed claim to the accused product." Contessa Food Prod., Inc. v. Conagra, Inc., 282 F.3d 1370, 1377 (Fed. Cir. 2002). "Comparison of the accused product includes two distinct tests, both of which must be satisfied in order to find infringement: (a) the 'ordinary observer' test, and (b) the 'point of novelty' test." Id. The court went on to state that the point of novelty test "requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art." Id.

**a. Ordinary Observer Test**

The ordinary observer test requires application of the test set forth in Gorham Co. v. White:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

81 U.S. 511, 528 (1871). In the present instance, the '015 patent claims a reflective Jeep® dashboard with twelve ornamental fasteners. Although some of Defendant's dashboards incorporate a reflective stainless steel surface like Plaintiffs' design, unlike Plaintiffs' design, none of the dashboards include fasteners. "[A]ll of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement." Contessa Food Prod., Inc. v. Conagra, Inc., 282 F.3d at 1378. The Federal Circuit has articulated the reason for this as being because "[a] patented design is defined by the drawings in the patent, not just by one feature of the claimed design." Id. (quoting KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir. 1993). Thus, in the ordinary observer analysis, the Court must view the patented design in its entirety. Id. (citing L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1125 (Fed. Cir. 1993).

The Court finds that the ordinary observer would not believe the patented design and the accused dashboard to be substantially the same. The ordinary purchaser of vehicle replacement parts would examine whether the dashboard came with or without fasteners, and would certainly consider ornamental fasteners to be a unique and distinguishing feature. The absence of decorative fasteners would not induce a purchaser

to buy Defendant's product believing it to be Plaintiffs' design. See Gorham, 81 U.S. at 528.

**b. Point of Novelty Test**

However, even if Plaintiffs could show that the ordinary observer test was met, Plaintiffs could not sustain a cause of action against Defendant because they cannot show that Defendant appropriated the points of novelty contained in Plaintiffs' design. See Contessa Food Prod., 282 F.3d at 1377. Plaintiffs' claimed design includes the rectangular shaped dashboard panel, the cutouts and grill patterns, and twelve decorative fasteners. (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. D.) The patent examiner expressly rejected Plaintiffs' claimed design, as originally submitted, as indefinite because the drawings were inconsistent. (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. D.) The prosecution history clearly indicates that the twelve decorative fasteners are indeed a key novel feature of the '015 patent. If this were not sufficient, Plaintiffs submitted affidavits claiming the points of novelty of their design are the reflective surface of the dashboard, and the "ornamental appearance of the fastener heads on the fasteners used to attach the dashboard panel to a dash." (Bronson Aff. ¶ 7; Stenger Aff. ¶ 7.)

Plaintiffs, without more, argue that Defendant need only incorporate one of the two points of novelty in order to infringe Plaintiffs' design patent. Plaintiffs contend that because they believed Defendant's reflective stainless steel dashboards infringed upon the point of novelty claimed as a reflective surface finish, that Defendant need not have appropriated the ornamental fasteners as well. The Federal Circuit rejected just such an argument in Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113

(Fed. Cir. 1998). In that case, Goodyear argued that "all of the points of novelty need not be appropriated when the effect of the design as a whole is substantially the same." Id. at 1118. The court found that the allegedly infringing tire did not contain one of the points of novelty, and thus, found the tire did not infringe Goodyear's design patent. Id. at 1121-22.

Defendant's dashboards do not include fasteners, nor does Defendant sell separately ornamental fasteners similar to those in Plaintiffs' design. (Peters Aff. ¶¶ 5, 6.) Because Defendant's dashboards do not incorporate "the novelty which distinguishes the patented design from the prior art," Defendant's dashboards cannot infringe Plaintiffs' design. Contessa Food Prod., 282 F.3d at 1377. Because Defendant's dashboards could not infringe Plaintiffs' design, Plaintiffs had no justification to file this baseless lawsuit.

**2. *Pre-Filing Investigation Requirement***

Plaintiffs failed to conduct a prefiling investigation of their infringement claims. The Court finds it implausible that between the time Plaintiffs retained counsel on November 29, 2000, and the time Plaintiffs filed their Complaint on November 30, 2000, that any investigation of Plaintiffs' claims was conducted. Indeed, no reference is made to any claim construction or infringement analysis on the part of Plaintiffs' attorney, and in fact, the correspondence attached to Mr. Sherrill's affidavit clearly indicates that Mr. Sherrill had not even reviewed the patent application or prosecution history prior to filing the Complaint. (Sherrill Aff. Ex. B.) However, "[t]he presence of an infringement analysis plays the key role in determining the reasonableness of the prefiling inquiry made in a patent infringement case under Rule 11." View Eng'g, Inc. v. Robotic Vision

Sys., Inc., 208 F.3d 981, 986 (Fed. Cir. 2000); see also Eltech Sys. Corp. v. PPG Indus., Inc., 903 F.2d 805, 811 (Fed. Cir. 1990) ("the reasonableness of the patentee in assessing infringement [is] a proper consideration" for awarding § 285 fees).

Additionally, Plaintiffs never examined any of Defendant's allegedly infringing products. Thus, the only basis for Plaintiffs' claims was Plaintiff Stenger's belief that Defendant's dashboards probably infringed Plaintiffs' patent. Mr. Stenger's belief was based solely on his knowledge of the patent, a dashboard he saw in a Jeep® vehicle, a phone call to Defendant's sales representative who stated that Defendant sold reflective stainless steel dashboards, and Defendant's catalog. Reliance on Mr. Stenger's beliefs, however, does not satisfy the prefiling investigation requirement, and is grounds for awarding fees and declaring a case exceptional. See View Eng'g, Inc., 208 F.3d at 985-86; cf. Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1260 (Fed. Cir. 2000). Had Plaintiffs and their counsel conducted a proper prefiling investigation, they should have known that bringing a suit against Defendant would be unjustified and baseless.

**3. *Unjustified Litigation***

Prior to filing the Complaint, neither Plaintiffs nor their counsel made a reasonable effort to ascertain whether Defendant's dashboards satisfied the two points of novelty. Determining whether Defendant's dashboards infringed upon Plaintiffs' patent "requires that the patent claims be interpreted and that the claims be found to read on the accused devices." S. Bravo Sys., Inc. v. Containment Tech. Corp., 96 F.3d 1372, 1375 (Fed. Cir. 1996). In the present instance, Plaintiffs knew from the beginning of this lawsuit that Defendant's products did not include fasteners, a claimed novelty of Plaintiffs' design patent. In fact, Defendant specifically called to Plaintiffs' attention the

patent examiner's statement, "that if the fasteners were not part of the claimed design they must be reduced to dotted lines and the appropriate dotted line statement must be inserted prior to the claim," when it explained to Plaintiffs that its products could not infringe the '015 patent. (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. D at 17-18.) In response to the examiner's comments, Plaintiffs expressly amended their patent application to include the fasteners as part of the claimed design. (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. D at 22.) Without the fasteners, Plaintiffs' patent application would have been denied. (Def.'s Mem. Supp. Mot. Att'y Fees, Costs, & Expenses, Ex. D at 22.) As such, the fasteners are an integral element of the design patent. See 37 C.F.R. § 1.152.

Plaintiffs failed to obtain a sample of any of Defendant's allegedly infringing dashboards. As in S. Bravo Systems, there is no evidence that Plaintiffs or their attorney "compared the accused devices with the patent claims" prior to filing their Complaint. See id. In Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245 (Fed. Cir. 2000), the court noted that maintaining a baseless action or failing to procure a sample of the allegedly infringing device may constitute extreme conduct worthy of awarding § 285 fees. See Speedplay, Inc., 211 F.3d at 1260 (citing Eltech Sys. Corp v. PPG Indus., Inc., 903 F.2d 805, 810 (Fed. Cir. 1990); Judin v. United States, 110 F.3d 780, 784 (Fed. Cir. 1997) (noting that in the past the court had affirmed an award of fees where the patentee knew its action was unfounded, and "upheld the imposition of sanctions because the patentee had not procured a sample of the allegedly infringing device before filing suit").

Defendant diligently sought prior art references, and forwarded them to Plaintiffs' counsel as they were found, calling into serious question whether the '015 patent was

even valid. Yet Plaintiffs and their counsel failed to withdraw their Complaint when confronted with the prior art. Defendant made numerous attempts to explain to Plaintiffs why Defendant's dashboards did not infringe the '015 patent, even if it were valid. Defendant alerted Plaintiffs prior to serving its motion for summary judgment, but Plaintiffs did not reciprocate and inform Defendant that they planned to seek reexamination of the patent. Had Plaintiffs so informed Defendant, it could have saved Defendant the attorneys' fees expended on drafting the summary judgment motion and affidavits.

"Where the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." Eltech Sys., Inc., 903 F.2d at 811. Here, Plaintiffs were not only manifestly unreasonable in assessing infringement, they failed to conduct an infringement assessment at all. Despite numerous attempts by Defendant to mitigate attorneys' fess in this matter, Plaintiffs continued to maintain this suit without any factual or legal support. Thus, the Court finds that Plaintiffs engaged in unjustified litigation of their patent infringement claims.

#### 4. *The Court May, in Its Discretion, Award Fees, Costs, and Expenses*

The Court has determined that Plaintiffs engaged in unjustified and baseless litigation, failed to conduct a prefiling investigation, and knowingly maintained their baseless suit in bad faith. Therefore, the Court finds that this case is exceptional, and turns to the question of awarding fees. The Federal Circuit has stated that failure of a plaintiff to perform an objectively reasonable prefiling investigation constitutes particularly egregious conduct.

> A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis for each infringement claim is, therefore, extremely important. In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement. Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.

View Eng'g, Inc., 208 F.3d at 986. In the present case, Plaintiffs and their counsel not only had an insufficient factual and legal basis for filing this infringement action, but they did not conduct a proper prefiling investigation, and continued to maintain the lawsuit even after concluding that their patent was not valid. Defendants not only have had to defend against this meritless suit, but have done so in a foreign state. Thus, in its discretion, the Court finds it appropriate to grant Defendant's motion in part.

Defendant seeks fees, costs, and expenses for (1) preparing and propounding interrogatories, document requests, and two sets of requests for admissions; (2) preparing responses to Plaintiffs' interrogatories, document requests, and requests for admissions; (3) providing supplemental responses to Plaintiffs' interrogatories; (4) preparing its motion for summary judgment and its reply brief; (5) preparing a motion for Rule 11 sanctions, which subsequently was withdrawn; (6) preparing the instant motions; and (7) interacting on numerous occasions with Plaintiffs' counsel by letter, telephone and email. Both Plaintiffs and Defendant served and responded to discovery requests, and through this discovery process, both parties became aware of the strengths and weaknesses of their respective cases. The Court notes that there were no discovery motions brought

before the Court, indicating that any such disputes were resolved between counsel. However, the Court is particularly troubled that Defendant alerted Plaintiffs to its impending motion for summary judgment, but Plaintiffs failed to agree to the dismissal of the action, recognizing that the '015 patent was invalid based upon the prior art provided to counsel by the defense. Thus, the Court finds it reasonable to award reasonable fees incurred by Defendant from the point at which Defendant began preparing its motion for summary judgment. This award will not, however, include the preparation and filing of Defendant's Rule 11 sanctions motion that it subsequently withdrew due to improper filing. The exact amount of reasonable fees, costs, and expenses will be determined by the Court once Defendant files and serves its itemized petition.

### C. Counsel's Liability Under 28 U.S.C. § 1927

Defendant claims that Plaintiffs' counsel, Mr. Sherrill, intentionally and recklessly disregarded his duties to this Court. (Def.'s Mem. Supp. Mot. Recover Att'y Fees, Costs, & Expenses Pursuant to 28 U.S.C. § 1927 at 3.) An attorney who unreasonably and vexatiously multiplies the proceedings may be personally liable for the excess costs, fees, and expenses reasonably incurred because of such conduct. 28 U.S.C. § 1927 (1994). "Sanctions are proper under § 1927 'when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" Lee v. First Lenders Ins. Serv., Inc., 236 F.3d 443, 445 (8th Cir. 2001) (quoting Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999) (citations omitted)).

Defendant argues that Plaintiffs' counsel intentionally and recklessly disregarded his duties to the Court when he failed to dismiss this litigation after first becoming aware of the prior art on June 19, 2001. Defendant asserts that Plaintiffs' counsel should have

conducted his own investigation of the prior art, and should not have simply relied on the opinions of his clients regarding the 1982 Off Road magazine article. (Def.'s Mem. Supp. Mot. Recover Att'y Fees, Costs, & Expenses Pursuant to 28 U.S.C. § 1927 at 4-5.) It is true that an attorney has a duty to conduct a reasonable investigation into facts that come to his attention during the course of litigation. See Eltech Sys. Corp., 710 F. Supp. at 637. Defendant argues that Plaintiffs' counsel's failure to investigate the prior art shown in the article rises to the level of unreasonable and vexatious conduct. The Court disagrees.

In order to impose sanctions under § 1927, "an attorney's actions must be so utterly without justification as to compel the conclusion that these actions were undertaken for an improper purpose." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2nd Cir. 1986), cert. denied, 480 U.S. 918 (1987). Although Plaintiffs' counsel's actions may have been unreasonable, the Court cannot find that his actions rise to the level of vexatious behavior. "Vexatious" behavior is that which incorporates malice or intent to harass. See Black's Law Dictionary (7th Ed.) at 1559. Defendant has failed to produce evidence of Plaintiffs' counsel's malice. Thus, Defendant's motion under § 1927 is denied.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion to Recover Costs, Fees, and Expenses Pursuant to 28 U.S.C. § 1927 (Doc. No. 26) is **DENIED**;

(2) Defendant's Motion to Recover Costs, Fees, and Expenses Pursuant to 35 U.S.C. § 285 (Doc. No. 53) is **GRANTED IN PART.** This matter is exceptional, and

Defendant may recover its reasonable costs, fees, and expenses incurred in defending the present action, from Plaintiffs and their attorney Michael S. Sherrill, as set forth in Section II.B.4. of this Order; and

(3) Defendant Four Wheel Drive Hardware, LLC, shall file and serve an itemized petition for the award of attorneys' fees, costs, and expenses within thirty (30) days of the date of this Order.

Dated: May 7, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge